# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **ANNETTE JACKSON,** | : | |
| *on behalf of* K.J., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:09-cv-00174- TWT/AJB** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| *Commissioner of Social* | : | |
| *Security Administration*, | : | |
| | : | |
| **Defendant.** | : | |

## ORDER FOR SERVICE OF
## REPORT AND RECOMMENDATION

Attached is the Report and Recommendation of the United States Magistrate

Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b),

N.D. Ga. R. 72.1(B) and 83.9(A), and Standing Order 08-01 (N.D. Ga. June 12, 2008).

Let the same be filed and a copy, with a copy of this order, be served upon counsel for

the parties, or if not represented, then directly upon said party.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,

to the Report and Recommendation within **fourteen (14) days** of service of this Order.

Should objections be filed, they shall specify with particularity the alleged error(s)

made (including reference by page number to any transcripts if applicable) and shall be

served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED**, this  15th   day of  July , 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **ANNETTE JACKSON,** | : | |
| *on behalf of K.J.,* | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:09-cv-00174- TWT/AJB** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| *Commissioner of Social* | : | |
| *Security Administration,* | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S
<u>FINAL REPORT AND RECOMMENDATION</u>**

Annette Jackson, on behalf of K.J. ("Plaintiff"),[1] brought this action pursuant to

§ 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), to obtain judicial

review of the final decision of the Commissioner of the Social Security Administration

("the Commissioner") denying the application for Supplemental Security Income

("SSI") Benefits.  For the reasons stated below, the undersigned **RECOMMENDS** that

the Commissioner's final decision be **REVERSED AND REMANDED**.

---

[1]     K.J. is a minor who was born on May 31, 1994.  [R54].

## I.   PROCEDURAL HISTORY

Plaintiff initially filed an application for SSI benefits on April 27, 2005, alleging disability commencing on January 1, 2001.[2] [*See* Record (hereinafter "R") 14, 54-57, 64]. Plaintiff's application was denied initially and on reconsideration. [R34-35]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on November 3, 2005. [R42]. An evidentiary hearing was held on June 30, 2008. [R424-45]. Following the hearing, the ALJ issued an unfavorable decision on July 23, 2008. [R14-25]. Plaintiff sought review of the ALJ's decision. [*See* R419-23]. The Appeals Council denied Plaintiff's request for review on October 17, 2008, rendering the ALJ's decision the final decision of the Commissioner. [R7-9].

Plaintiff then filed a civil action in this Court on December 19, 2008, seeking review of the Commissioner's final decision. *Annette Jackson on behalf of K.J. v. Michael J. Astrue*, Civil Action File No. 1:09-CV-00174-TWT-AJB. [Doc. 2]. The answer and transcript were filed on September 14, 2009. [Docs.8-9]. Plaintiff filed the initial brief on October 19, 2009, [Doc. 12], and the Commissioner filed a response on

---

[2]        Although Plaintiff states that her disability commenced in January 2001, "[p]ayment of [SSI] benefits may not be made for any period that precedes the first month following the date on which the application is filed . . . ." 20 C.F.R. § 416.501. As such, the period when Plaintiff may start receiving disability benefits, if she is eligible, starts in April 2005 when she filed her application.

2

November 18, 2009, [Doc. 14].  Plaintiff filed a reply brief on December 3, 2009.

[Doc. 15].  The undersigned held a hearing for oral arguments on February 4, 2010.

[*See* Doc. 17].  The matter is now before the Court upon the administrative record, oral

argument, and the parties' pleadings and briefs and is ripe for review pursuant to

42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

## II.    STATEMENT OF FACTS

### A.    *Administrative Records*

A May 2005 Function Report for a Child between 6 and 12 indicated that

Plaintiff did not have problems talking clearly, but she mispronounced words

sometimes.  [R79].  Plaintiff could not repeat stories or tell jokes, and she would need

to have instructions re-explained.  Plaintiff could, however, deliver messages, explain

her actions, use sentences with "because," "what if," or "should have been," and talk

with family and friends.  [R80].  Plaintiff could: read capital letters and small letters;

read simple words; read and understand simple sentences; read and understand stories

in books or magazines; print letters and her name; write in longhand; add and subtract

with numbers greater than 10; tell the day of the week and month; and tell time.

Plaintiff could not spell most 3-4 letter words, write a simple story, or explain money.

[R81].  Plaintiff could perform most physical activities such as running, throwing a ball,

3

riding a bike, dressing dolls, and jumping rope, but she could not swim. [R82].
Plaintiff's impairments affected her behavior with other people in that Plaintiff could
not play team sports and she was easy to influence. Plaintiff could, however, make
friends and get along with adults and teachers. [R83]. Plaintiff's impairment affected
her ability to help herself and take care of her needs by preventing her from combing
her hair, picking up toys, hanging up clothes, and accepting criticism. Despite these
problems, Plaintiff could use zippers and buttons, tie shoe laces, use utensils to eat, help
around the house, obey safety rules, and get to school on time. [R84]. Plaintiff's
ability to pay attention was limited in that Plaintiff could not finish tasks she started or
complete homework. Plaintiff kept busy on her own, worked on arts projects, and
sometimes completed chores. Plaintiff had low self esteem because she could not keep
up with other students in spelling and reading. [R85]. Plaintiff was in special
education classes, and she was two grade levels behind. [R86].

In an August 2005, Disability Report – Appeal, Plaintiff's guardian (her
grandmother) reported that Plaintiff had a learning disability and speech problems,
which prevented her from making progress in school. [R70]. Plaintiff had to be
reminded to tend to personal needs, and she would forget quickly. Plaintiff was easy
to distract. Plaintiff had low self esteem and depression. [R74].

4

B.      *Medical Records*

Social Worker Jackie Haar completed a Social Work Psychological Assessment on January 18, 2005.  [R340].  The form indicated that Plaintiff had no support from her nuclear family or from social/recreational family activities.  Plaintiff was delayed in her communication skills.  Plaintiff had financial difficulties in that she was on Medicaid and food stamps.  Plaintiff suffered neglect when her mother had cared for her.  Plaintiff had educational issues because she was only in the third grade but was supposed to be in the fifth grade.  [R341].  Plaintiff's grandmother noted that she was concerned about Plaintiff's self-esteem.  [R343].

On July 28, 2005, speech language pathologist Sharonda Coleman-Singleton performed a Speech Language Evaluation of Plaintiff.  [R334-35].  Plaintiff's test results were as follows: 18th percentile in listening comprehension; 16th percentile in oral expression; 14th percentile in oral composite, 25th percentile in receptive one-word vocabulary test; and 5th percentile in expressive one-word vocabulary.  Based on these results, Coleman-Singleton found that Plaintiff's language and receptive vocabulary skills were within the "typical range" as compared to peers, but that her expressive vocabulary skills were "somewhat disordered."  Plaintiff demonstrated difficulty with

5

grammar and semantics.  Coleman-Singleton did not recommend speech/language therapy for Plaintiff.  [R335].

On August 12, 2005, non-examining speech pathologist Patricia M. Higgins completed a Childhood Disability Evaluation Form.  [R327-33].  Higgins found that Plaintiff had a moderate language impairment, [R327], which resulted in less than marked limitations in the domain of acquiring and using information due to problems with expressive language, [R329].

Non-examining psychologist David Williams, Ph.D., completed a Childhood disability evaluation form on August 17, 2005, finding that Plaintiff's impairments involving language and moderate learning disability were severe but did not meet or equal a Listing.  [R320].  Williams noted that Plaintiff was in special education classes, but she had average IQ with learning disabilities in processing, math, and spelling. Williams determined that this did not meet or equal a Listing.  [R325].[3]

On September 2, 2005, Plaintiff saw Dr. Ruth Shim for a history of a depressed, sad mood, being withdrawn, limited interaction with family and friends, and school

_____

[3]     The undersigned notes that Williams indicated that Plaintiff had marked limitations in two domains.  [R324].  Given the context of the remainder of the Williams's Disability evaluation form indicating that Plaintiff did not meet or equal a Listing [R320, 325], the notation of two marked limitations appears to be error.

6

difficulties, including being held back in the fourth grade.  Dr. Shim's evaluation note indicated that Plaintiff: was oriented to person, place, situation and time; was neat in appearance; made tight associations; acted appropriately; had intact cognition; was cooperative; had fair insight, judgment, and memory; had normal speech; and had appropriate thought content.  Dr. Shim noted that Plaintiff was initially withdrawn and distractible, but she became interactive and imaginative.  Dr. Shim diagnosed Plaintiff with depressive disorder NOS.  [R302].

Dr. Shim saw Plaintiff on September 16, 2005, and noted that Plaintiff struggled at school but was interacting well with classmates.  Plaintiff participated well in play therapy, but chose to play games suitable for those ages 3 to 6.  Dr. Shim diagnosed Plaintiff on Axis I with "311,"[4] deferred an Axis II diagnosis, and indicated that mother

---

[4]      Code 311 in the Diagnostic and Statistical Manual of Mental Disorders -IV-TR ("DSM-IV") is the code for depressive disorder NOS.  *See* Diagnostic and Statistical Manual of Mental Disorders -IV-TR at 381-82 (2000).

7

AO 72A
(Rev.8/8
2)

was incarcerated on Axis IV.[5] Dr. Shim set goals of improving depression, self esteem, and school performance.  [R301].

Plaintiff returned to see Dr. Shim on September 30.  Dr. Shim noted that Plaintiff declined to talk about her mother's pregnancy and avoided discussing topics that caused distress.  Dr. Shim noted that Plaintiff was able to laugh and joke about many aspects of her life and reported strong relationships with friends.  Plaintiff was pleasant and cooperative.  Her mood was good, and she had full affect.  Plaintiff had mild distractibility.  [R300].

---

[5]     The DSM-IV uses a "multiaxial system," which "facilitates comprehensive and systematic evaluation with attention to the various mental disorders and general medical conditions, psychosocial and environmental problems, and level of functioning that might be overlooked if the focus were on assessing a single presenting problem." *See* DSM-IV at 27.  First, "Axis I is for reporting all the various disorders or conditions in the Classification except for the Personality Disorders and Mental Retardation (which are reported on Axis II)." *Id.*  Second, "Axis II is for reporting Personality Disorders and Mental Retardation.  It may also be used for noting prominent maladaptive personality features and defense mechanisms." *Id.* at 28.  Third, "Axis III is for reporting current general medical conditions that are potentially relevant to the understanding or management of the individual's mental disorder." *Id.* at 29.  Fourth, "Axis IV is for reporting psychosocial and environmental problems that may affect the diagnosis, treatment, and prognosis of mental disorders (Axes I and II)." *Id.* at 31.  Finally, "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning.  This information is useful in planning treatment and measuring its impact, and in predicting outcome." *Id.* at 32.

8

Psychologist Christi Bartolomucci, Ph.D., performed a psychological evaluation on October 5, 2005, when Plaintiff was 11 years old and in the fourth grade. [R409-18]. Bartolomucci reported that Plaintiff began living with her grandmother at age six, but that prior to this age, Plaintiff had lived with her mother who was a poor caretaker due to drug use and "running the streets." Plaintiff did not attend school while living with her mother and was enrolled in the first grade without any prior education once the State intervened. Plaintiff had repeated the first and third grades at the time of Bartolomucci's report. In fourth grade, Plaintiff was enrolled in 10 hours per week of special education classes and received speech therapy for articulation problems. [R410].

Bartolomucci observed that Plaintiff appeared her age. Plaintiff was shy and soft spoken initially, but she became more comfortable as the evaluation progressed. Plaintiff was cooperative, but her mood was somewhat sad. [R410]. Plaintiff did not volunteer information and disclosed very little information. [R414]. Plaintiff's grandmother expressed concern that Plaintiff did not want to grow up, regressed to baby talk, and had a difficult time making simple decisions. The grandmother's responses to the Child Behavior Checklist indicated that Plaintiff was in the clinical range on the Withdrawn/Depressed and Social Problems scales. [R415]. On the

9

ADHD IV rating scale, Plaintiff showed no concerns with inattention or hyperactivity. [R416-17].

Bartolomucci found that Plaintiff's test scores, including a full scale IQ of 78, placed her within the extremely low to borderline intelligence range. Bartolomucci was troubled by the scores because Plaintiff had already repeated two grades. Bartolomucci found that Plaintiff had a difficult time understanding directions for new or abstract tasks. Bartolomucci found that: (1) Plaintiff's vocabulary was "significantly less developed"; (2) Plaintiff might lack a broad base of vocabulary to understand communications and fully articulate her thoughts; (3) Plaintiff was likely to have difficulties with similarities compared to her peers; (4) Plaintiff's scores for perceptual reasoning were in the borderline range but varied significantly across subtests, [R412]; (5) Plaintiff's processing speed was within the low average range and reflected that Plaintiff "may learn new information somewhat slower than the average peers," [R413].

Bartolomucci also administered the Wechsler Individual Achievement Test-II ("WIAT-II") and scored Plaintiff in the 1st percentile in word reading, the 8th percentile in pseudoword decoding; the 1st percentile in mathematical operations, and the 2nd percentile in spelling. These scores were "in the extremely low to borderline range across subject areas." These scores were "especially concerning" because Plaintiff had

10

been retained twice, and they "suggest[ed] that [Plaintiff was] having difficulty acquiring new information presented to her within the school setting." Bartolomucci noted that Plaintiff was having difficulty with learning the basic fundamentals of reading and with decoding unfamiliar words. [R413]. Plaintiff did not appear to know many of the basic letter-sound associations. Math was an area of increased confidence for Plaintiff even though she did not pay attention to multiplication signs. Plaintiff's spelling was poor, and she had not acquired some grammatical rules and irregular spellings. [R414].

Bartolomucci believed that Plaintiff needed tutoring services along with academic remediation services. [R417]. Bartolomucci diagnosed Plaintiff as follows: (1) reading disorder (provisional) and adjustment disorder with depressed mood on Axis I; (2) no diagnosis on Axis II; (3) none on Axis III; (4) a history of physical abuse, removal from family, peer difficulties, and placement difficulties on Axis IV; and (5) a Global Assessment of Functioning ("GAF") score of 63[6] on Axis V. [R417].

---

[6]     Under the DSM-IV-TR, "[t]he GAF scale is divided into 10 ranges of functioning. Making a GAF rating involves picking a single value that best reflects the individual's overall level of functioning." DSM-IV-TR at 32. "In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation)[.]" *Id.* at 33. A GAF score between 61 and 70 reflects:

Some mild symptoms (e.g., depressed mood and mild insomnia) OR some

11

On October 19, 2005, non-examining psychologist John Cooper, Ph.D., completed a Childhood Disability Evaluation Form. [R314-19]. Cooper determined that Plaintiff suffered from a moderate learning disability and that this impairment was severe but not sufficiently severe to meet or equal the Listings. [R314]. Cooper found that Plaintiff had less than marked limitations in the domains of acquiring and using information, interacting with others, and caring for herself. [R316-17]. As for the acquiring information domain, Cooper explained that Plaintiff had average intelligence but had problems with expressive language, vocabulary, and spelling. Cooper noted that Plaintiff's timidity and moderate communication impairment limited her ability to interact and relate with others. [R316]. As for caring for herself, Cooper noted that Plaintiff tended to forget quickly and had to be reminded of self-care needs. [R317]. Although Cooper found limitations in these three domains, he found no limitations in the domains of attending and completing tasks, manipulating objects, and health and physical well being. [R316-17].

---

difficulty in social, occupational, or school  functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

*Id.* at 34.

12

Plaintiff saw Dr. Shim on October 21, 2005, and reported doing well. Plaintiff's mother had a baby while in jail, and the baby was being cared for by Plaintiff's grandmother. Dr. Shim reported that Plaintiff was reluctant to discuss any details or issues in her life. Plaintiff discussed friends and indicated that they spent time focusing on boys. Plaintiff denied having irritable symptoms or being sad or depressed. Dr. Shim diagnosed Plaintiff with depressive disorder on Axis I and family strain on Axis IV. Dr. Shim indicated that goals were to improve depression, self esteem, school performance, and parent-child relationship. [R299].

On November 18, 2005, Dr. Shim noted that Plaintiff was somewhat guarded in discussing issues about home and school life. Plaintiff had difficulty during the reading portion of a game. Dr. Shim found that Plaintiff struggled with limits and boundaries and that Plaintiff needed to work on her feelings of shame and embarrassment that transpired when she had difficulty with reading. Plaintiff denied any complaints or problems. Dr. Shim diagnosed Plaintiff with: (1) depressive disorder on Axis I; (2) mild mental retardation on Axis II; and (3) family problems on Axis IV. [R297].

Dr. Shim saw Plaintiff on January 27, 2006, at which time Plaintiff denied any complaints. Plaintiff continued to be detached and guarded in therapy. Plaintiff was alert, oriented, calm, and cooperative. Her speech was at a normal rate, volume, and

13

rhythm.  Plaintiff's mood was "okay."  Dr. Shim gave the same diagnosis, namely depressive disorder on Axis I, mild mental retardation on Axis II, and family problems on Axis IV.  [R296].

Plaintiff returned to Dr. Shim on February 24, 2006.  Dr. Shim found Plaintiff to be more talkative than in the past.  Plaintiff remained evasive concerning personal issues.  Dr. Shim diagnosed Plaintiff with depressive disorder on Axis I, deferred on Axis II, and problems with family support on Axis IV.  [R295].  On March 17, 2006, Dr. Shim provided the same diagnosis after noting that Plaintiff continued to present a very shy affect, remained guarded in answering questions, and spoke mostly in a baby voice.  [R294].

On April 14, 2006, Dr. Shim saw Plaintiff who reported that school was boring and that she was not doing any work in school.  Dr. Shim diagnosed Plaintiff as follows: (1) adjustment disorder with depressed mood on Axis I; (2) deferred on Axis II; and (3) family support problems on Axis IV.  [R293].

Also on April 14, Dr. Shim completed two questionnaires.  In the first entitled "112.04 . . . Listing," Dr. Shim indicated that she had seen Plaintiff on a weekly basis. Dr. Shim found the following symptoms to be present: (1) depressive or irritable mood; (2) feelings of worthlessness or guilt; and (3) difficulty thinking or concentrating.

14

[R306].   Dr. Shim found that Plaintiff had marked impairments in: (1) social functioning; and (2) age-appropriate cognitive/communicative functioning.  [R307]. Dr. Shim also found that Plaintiff had deficiencies of concentration, persistence, and pace resulting in frequent failures to complete tasks.  Dr. Shim determined that Plaintiff suffered from depression because Plaintiff's psychological evaluation found academic difficulties, depressed mood, and a reading disorder.  [R308].

In the second questionnaire entitled "Broad Functional Limitations," Dr. Shim reported seeing Plaintiff every two weeks.  Dr. Shim found that Plaintiff had marked limitations in acquiring and using information because she had difficulty applying new information to novel situations.  Dr. Shim also found that Plaintiff had marked limitations in attending and completing tasks because Plaintiff was unable to persist when tasks became challenging without assistance. [R309].  Dr. Shim determined that Plaintiff had an extreme limitation in interacting and relating with others because she could not communicate her own desires to others.  Dr. Shim found that Plaintiff had less than marked limitations in moving and manipulating objects, caring for herself, and health and physical well being.  [R310].[7]

_____

[7]      The record also contains medical records from the Pediatric Primary Care unit of the Grady Health System.  [R289-92].  These records are difficult to decipher and do not appear to be relevant to Plaintiff's disability application, so they are not

15

C.      *School Records*[8]

On February 5, 2003, Plaintiff was referred for a special education eligibility report because Plaintiff had below grade level performance, had limited sight word vocabulary, was making slow progress learning new words, and had poor decoding skills. [R275]. Plaintiff was below grade level in math and language arts. [R255-56]. A skills inventory report from February 2003 indicated that Plaintiff had areas of concern in: printing legibly and correctly forming letters/words; correctly spacing words and sentences; understanding the meaning of orally presented information; following simple and multi-step verbal commands; communicating by writing; developing vocabulary; mastering sound symbol correspondence; reading without letter reversals; reading without excessive omissions; recognizing sight words; and decoding unfamiliar words. [R262]. Plaintiff also had areas of concern with: reading comprehension; math calculation and reasoning; and attention/memory, particularly

———————————

summarized in this Report and Recommendation.

[8]      The administrative record also contains school records from 2001 [R263-70] and 2002 [R252, 257-59, 280]. Since Plaintiff is eligible for disability benefits for a period after April 2005, the undersigned does not summarize these early school records.

16

AO 72A
(Rev.8/8
2)

screening out distractions, sustaining concentration, shifting attention, staying on task in large and small groups, and recalling information. [R261].

On February 14, 2003, a record noted that Plaintiff had difficulty decoding longer words, becoming frustrated as reading passages became longer and more difficult, solving verbally presented word problems, and calculating addition and subtraction problems involving larger numbers. [R248].

Testing from March 2003 revealed that Plaintiff had a nonverbal IQ of 95, placing her within the average range of intelligence. [R276]. Plaintiff had not mastered sound/symbol correspondence, did not recognize and retain sight words, could not recall facts or ideas after reading passages, did not make accurate mathematical computations, and had difficulty solving problems involving time, money, and measurement. [R277].

In March 2003, school psychologist Wendy Barker drafted a psychoeducational report of Plaintiff, who was in second grade in the Fulton County school system at the time. [R348-57]. Barker indicated that prior to August 2001, Plaintiff moved schools a lot and that she repeated first grade. After August 2001, Plaintiff's attendance was consistent. [R348]. After testing and examining school records, Barker concluded that Plaintiff was of average intelligence. Plaintiff had processing problems in the areas of

17

phonological memory, rapid naming, visual memory, and visual closure.  [R356].

Barker believed that Plaintiff possessed the characteristics and criteria of individuals

with learning disabilities, so she recommended considering placement in the least

restrictive environment.  [R357].

On April 3, 2003, it was determined that Plaintiff met the eligibility requirements

for Specific Learning Disability.  It was recommended that Plaintiff remain in a general

education setting but that Plaintiff be placed in special education for half day or less to

address Plaintiff's learning disability in reading and math in the least restrictive

environment. [R242].  Although Plaintiff operated in the average range of intelligence,

she had problems in reading and math.  Her expression skills were age appropriate, but

she had difficulty understanding orally presented information and following verbal

directions.  Plaintiff's writing and vocabulary were not age appropriate.  Plaintiff had

difficulty focusing and sustaining her attention for an age appropriate time.  She had

difficulty shifting her attention and staying on task in group settings.  Plaintiff did not

"think" before responding to questions.  She did not consistently complete homework,

but voluntarily participated in class discussions.  During class, Plaintiff was generally

cooperative with teachers.  She had friends and worked cooperatively with her peers.

[R240].

18

A March 29, 2004, Individual Student Report indicated that Plaintiff was at the Emerging Writer stage (Stage 1) because Plaintiff was just beginning to express her ideas in writing, focus on her audience, and organize her ideas. [R283]. Plaintiff met the criteria for an Early Intervention Program ("EIP") placement in reading and math. [R284].

Plaintiff's third-grade test results from the Georgia Criterion-Referenced Competency Tests in the Spring of 2004 indicated that Plaintiff did not meet performance levels in reading, language arts, mathematics, science, or social studies. [R167-68].

A May 26, 2004, eligibility report from the Atlanta Public Schools found that Plaintiff was eligible for speech and language therapy. [R345-47; *see also* R232]. Testing revealed that Plaintiff's articulation, voice, fluency, and oral motor skills were within normal limits for children of Plaintiff's age. Plaintiff had mild deficits in expressive and receptive language, and she had moderate deficits in phonological awareness. Finally, Plaintiff had the most difficulty with decoding skills needed for reading, spelling, and comprehension. [R347].

Plaintiff's end of the year report card for the 2003-2004 school year indicated that Plaintiff received satisfactory marks in conduct and work habits. During the school

19

year, Plaintiff missed 6 days and was not tardy.  Plaintiff received As and Bs in art, music, band, and physical education, and Cs in math, science, health and social studies. Plaintiff was below grade level in math.  In language arts, Plaintiff was on a modified education plan and received Bs in reading composition and listening and speaking. [R164].

Plaintiff's third-grade test results from the Georgia Criterion-Referenced Competency Tests in the Spring of 2005 revealed that Plaintiff met the standards for science, social studies, reading, and language arts.  [R159-60].  Plaintiff did not meet the standard for math.  Also within the language arts and reading subjects, Plaintiff did not meet standards for reading for meaning, recalling information, and sentence construction.  [R159].[9]

In April 2005, Plaintiff was described as a student of normal intelligence who read at a 2.5 to 3.0 grade level and had comprehension on a 3.0 to 3.5 level.  Plaintiff was shy and self conscious, but she had friends in class and in the neighborhood. Plaintiff's writing was a weakness because of spelling problems.  Plaintiff's oral expression tended to follow the speaking habits of those around her.  [R212].  Plaintiff

---

[9]     Plaintiff took the third grade test in the Spring of 2004 and the Spring of 2005 because Plaintiff had repeated the third grade.  [*See* R410].

20

AO 72A
(Rev.8/8
2)

had expressive/receptive language delays and her voice intonations were inappropriate in conversational speech.  Plaintiff did not have problems with motor skills, and she could tell time, count money, show respect for authority, and take care of her personal needs.  Plaintiff's weaknesses were in math reasoning, spelling, and decoding.  [R213]. Also in April 2005, it was recommended that Plaintiff be placed in 16.5 hours per week in a regular education setting and that she be placed in 13.5 hours per week for special education classes in language arts, mathematics, and speech-language pathology.  The EIP report concluded, "Due to the severity of [Plaintiff's] disability, she requires specialized one-on-one education."  [R216].

On September 7, 2005, teacher, Dawn Baker, completed a Teacher Questionnaire in which Baker indicated that Plaintiff was in regular classes and special education classes for 1.5 hours.  In this questionnaire, Baker indicated that she had known Plaintiff for two weeks.  [R87].  Plaintiff did not know her multiplication tables, and she had difficulty comprehending reading materials.  Plaintiff had no problem with absenteeism.  Plaintiff did not always use complete sentences.  She got along well with her peers.  Plaintiff did not have problems with her fine or gross motor skills.  [R88]. Plaintiff could follow directions without difficulty, but she would have to be redirected

21

to complete tasks.  Plaintiff responded well to teachers.  [R89].  She was well groomed. Baker finally indicated that Plaintiff functioned on an age-appropriate level.  [R90].

On February 27, 2006, Stacey Levy, a speech pathologist, completed a Teacher Questionnaire.  Levy noted that she had known Plaintiff for two and a half years, and Plaintiff had received one hour of speech therapy per week. Plaintiff had a normal IQ, but she had receptive and expressive language delays affecting semantics and syntax and language processing issues, which affected her comprehension of complex information.  Plaintiff did not have problems with absenteeism.  Plaintiff also had trouble expressing sequential information or expressing complicated ideas, but she could express her basic wants and needs without problems.  Plaintiff could follow simple instructions and complex instructions in quiet settings with assistance and repetition.  She had more difficulty with complex instructions in a distracting environment.  Plaintiff was cooperative and motivated to learn.  She interacted well with adults and peers.  [R313].

On April 19, 2006, the instructional support team found that Plaintiff was making progress in her programs.  [R155].  The instructional support team recommended that Plaintiff continue in the special programs for speech and learning.  [R153].  Plaintiff's April 2006 EIP indicated that she would be in (1) special education for language arts

and math for 12.5 hours per week due to the severity of her disability; (2) speech therapy for 1 hour per week; and (3) regular classes in art, music, science, foreign language, physical education and social studies for 16.5 hours per week.  [R112].  Plaintiff's weaknesses remained math reasoning, spelling, and decoding.  [R109].

The April 2006 EIP report indicated that Plaintiff was reading on a 3.0 grade level, was comprehending on a 3.0 to 3.5 level, and had made "a lot of progress" in reading and writing.  Plaintiff was described as shy and self conscious, but she had friends.  Plaintiff could express her thoughts and feelings on paper with assistance, but her spelling got in the way and her writing lacked details.  Plaintiff used inappropriate intonations in speech, and she had expressive/receptive language delays.  [R108].

A report card from fourth grade indicated that Plaintiff had been promoted to fifth grade.  Plaintiff was absent 9 days for the school year and tardy two days.  Plaintiff received grades of satisfactory or higher for conduct and work habits.  Plaintiff needed to work on participating in class.  Plaintiff's grades in her regular classes were between As (music, art, and physical education) and Cs (foreign language, science, social studies, and health).  In the modified curriculum classes, Plaintiff received As and Bs in language arts and Cs in math.  Plaintiff was below grade in math and needed teacher guidance to read.  The teacher's comments indicated that Plaintiff was showing a lot

23

of improvement in reading, was putting forth effort in class, but she needed to study her multiplication tables.  [R282].

On May 22, 2008, Plaintiff's sixth grade, special education teacher, Erika Gresham, completed a teacher questionnaire.  [R60-63].  Gresham stated that she had known Plaintiff for 5 months.  Plaintiff attended 2.5 hours of regular classes per day and 4 hours of learning disabled classes.  Plaintiff also had language/speech therapy for one hour per week.  [R60].  Gresham noted that Plaintiff functioned at a third to fourth grade level (instead of a sixth grade level) in reading comprehension, written expression, and mathematical calculations / problem solving.  Plaintiff also had "mild deficits" in receptive language skills as demonstrated by her inability to understand vocabulary concepts and to identify the main idea of passages.  Plaintiff was labored in her writing, but she had normal gross motor skills.  Plaintiff had good attendance, missing only five days due to illness.  [R61].  Plaintiff had trouble following written instructions, but she did better when instructed orally.  Plaintiff also could work independently so long as the teacher ensured that Plaintiff understood the task.  Once Plaintiff understood a concept, she completed the task in the prescribed time.  Plaintiff got along well with her teachers and peers and was very respectful to teachers and well-liked by peers.  [R62].  Finally, Gresham noted that Plaintiff was immature when

24

compared to her peers, whined and complained when frustrated, and was unable to understand many directions given to her. [R63].

The EIP for May 2008 indicated that Plaintiff would be placed in special education services for reading, language arts, mathematics, and speech language pathology because she required intensive, small group instruction to address her problems in these areas. Plaintiff was placed in the general education classes for art, music, science, physical education, and social studies. [R374]. According to the EIP report, Plaintiff was oral reading at 4.0 grade, had reading vocabulary comprehension at a second grade level, and had math computation at a 4.7 grade level. Plaintiff made gains in reading, but she did not master recall of basic multiplication and division facts. Plaintiff did not consistently turn in homework. Plaintiff was described as pleasant to work with, friendly and courteous toward adults, and able to get along with peers. Plaintiff's maturity was not comparable to her peers because she whined and complained about her environment when frustrated. Plaintiff's written and oral expression were low level due to a limited vocabulary, but her listening skills were good. She followed instructions when presented orally. [R401]. Plaintiff could communicate her needs and desires and could take care of her personal needs. Plaintiff's weaknesses were in writing and problem solving. [R402].

25

### D.     March 26, 2008, Administrative Hearing

At the time of the hearing, Plaintiff was just starting the seventh grade, but she should have been in the ninth grade. [R430]. Plaintiff's grandmother testified that Plaintiff lived with her and that she had legal custody of Plaintiff because Plaintiff's mother was abusing drugs and alcohol and running the streets. [R429]. Plaintiff also lived with her two sisters. [R430]. Plaintiff's grades were Cs and Ds from the prior report card. [R432]. In school, Plaintiff had trouble with spelling, math (particularly multiplication), and reading comprehension. Plaintiff was easily irritated, cried a lot, and felt depressed a lot. [R434]. Plaintiff received speech therapy because she cut her words short and did not pronounce some words. [R437]. Plaintiff could focus on her homework, until it started to bother her. [R438]. Plaintiff did not cause trouble at school because she stayed quiet and had "sort of like a low self esteem." [R434].

Plaintiff had a few friends with whom she went swimming, spent the night, or went to the movies, but she did not have many friends because she did not go around too many people. [R433]. Plaintiff had a friend around her age and a friend who was a little younger. [R439].

Plaintiff received mental health treatment from Dr. Shim, but had to stop because Medicaid would no longer cover the therapy. [R439].

26

## III.   ALJ'S FINDINGS OF FACT

On July 23, 2008, the ALJ made the following findings of fact and conclusions of law:

1.   The claimant was born on May 31, 1994.  Therefore, she was a school-age child on April 27, 2005, the date the application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2.   The claimant is a child and has never engaged in substantial gainful activity (20 CFR 416.924(b) and 416.972).

3.   The claimant has the following severe combination of impairments: a learning disorder and speech/language disorder (20 CFR 416.924(c)).

. . .

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

. . .

5.   The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).[10]

---

[10]   In making this finding, the ALJ concluded that Plaintiff had no limitations in: (1) attending and completing tasks; (2) moving about and manipulating objects; (3) health and physical well being; and (4) caring for herself.  [R21, 23-25].  Also, the ALJ found that Plaintiff had less than marked limitation in (1) interacting with others and (2) acquiring and using information.  [R20, 22].

AO 72A
(Rev.8/8
2)

. . .

6.   The claimant has not been disabled, as defined in the Social Security Act, since April 27, 2005, the date the application was filed (20 CFR 416.924(a)).

[R17-25].

The ALJ explained in relevant part that at Step Two, Plaintiff's learning disorder and speech/language disorder were a severe combination of impairments.  Under this Step, the ALJ summarized the findings of Dr. Christi Bartolomucci and Dr. Ruth Shim. [R17-18].  The ALJ later explained that he was giving Dr. Shim's opinion "negligible weight" because evidence showed Plaintiff was cooperative, her mood was generally good, she was interactive, she was doing well, and she denied depressive symptoms. [R19].  Also, the ALJ noted that "Dr. Shim opined that [Plaintiff] met Listing 112.04," [R18], but the ALJ gave little weight to Shim's opinion.  [R19].

The ALJ recognized that Plaintiff's grandmother alleged that Plaintiff was irritable and depressed and that Plaintiff was disabled due to a learning disorder and speech problems.  [R19].  The ALJ did not find this testimony entirely credible because he found that Plaintiff did not functionally equal the Listings.  He also noted that Plaintiff had communication problems, but he identified record evidence, showing that

28

Plaintiff did not need speech classes in July 2005, Plaintiff had an average IQ, and a teacher found no limitations in the remaining domains.  [*Id.*].

Finally, the ALJ found that Plaintiff had less than marked limitations in acquiring and using information and interacting and relating with others.  [R20, 22].  As for acquiring and using information, the ALJ found that Plaintiff attended six schools for her first two years, had attendance problems, and had academic difficulties, but the ALJ noted that Plaintiff's communication was understandable and her school performance was improving.  [R20].  As for interacting with others, the ALJ noted that Plaintiff was timid and self-conscious, but she had friends her own age, made new friends, got along with adults, and got along with teachers.  [R22].  The ALJ found that Plaintiff had no limitation in attending and completing tasks because: (1) Plaintiff tried to complete assignments, kept busy, and completed chores; and (2) Plaintiff's responses on the ADHD-IV rating scale did not indicate that Plaintiff had problems with inattention or hyperactivity.  [R21].

## IV.    STANDARD FOR DETERMINING DISABILITY

"An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in

29

death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906 (same).  The individual who seeks Social Security disability benefits must prove that he or she is disabled.  42 U.S.C. § 1382c(a)(H)(i) (rendering the provisions from 42 U.S.C. § 423(d)(5) applicable to SSI disability applications, which places burden on claimant to prove disability); *see also* 20 C.F.R. § 416.912(a).

"Federal regulations set forth the process by which the [Social Security Administration] determines if a child is disabled and thereby eligible for disability benefits."  *Shinn ex rel. Shinn v. Commissioner*,  391 F.3d 1276, 1278-1279 (11th Cir. 2004).  "The Commissioner uses a three-step analysis to make this determination." *Turberville ex rel. Rowell v. Astrue*, 316 Fed. Appx. 891, 892 (11th Cir. Feb. 18, 2009). Under the regulations, this process begins at Step One with the Commissioner determining whether the child is "doing substantial gainful activity."  If the child is performing substantial gainful activity, the child is considered "not disabled" and is ineligible for benefits.  20 C.F.R. § 416.924(a), (b).[11]

---

[11]     The summary of the evaluation process for childhood disability cases borrows heavily from the description of the Commissioner's evaluation process in the Eleventh Circuit's decision in *Shinn ex rel. Shinn*, 391 F.3d at 1278-79.

30

If the child is not engaged in substantial gainful activity, the Commissioner next considers at Step Two whether the child's "physical or mental impairment(s)" alone or in combination with other impairments are severe. 20 C.F.R. § 416.924(a), (c). An impairment will be considered in a disability application only if it arises from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. Thus, an impairment "must be established by medical evidence." *Id.*; *see also* 20 C.F.R. § 416.913(a) ("[The Commissioner] need[s] evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."). In contrast, non-medical evidence, including the testimony of "[e]ducational personnel" and "parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy," may be used to demonstrate that a child's impairment is severe. 20 C.F.R. §§ 416.913(d)(2), (4), 416.924a(a)(2).

If the child has a severe impairment or impairments, the Commissioner next assesses at Step Three whether the impairment "causes marked and severe functional limitations" for the child. 20 C.F.R. §§ 416.911(b), 416.924(d). Limitations arising from pain count in this determination. 20 C.F.R. § 416.924(a) ("[The ALJ] will also evaluate any limitations in your functioning that result from your symptoms, including

31

pain.") (parenthetical omitted); *see also* 20 C.F.R. § 416.924a(b)(2) ("[Y]our symptoms (such as pain . . .) may limit your functioning.").  The Commissioner uses objective criteria listed in the Code of Federal Regulations ("C.F.R.") to determine whether the impairment causes severe and marked limitations.  "The C.F.R. contains a Listing of Impairments ["the Listings," found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories."  *Shinn ex rel. Shinn*, 391 F.3d at 1278 (citing 20 C.F.R. § 416.925(a)).  "For each impairment, the Listings discuss various limitations on a person's abilities that [the] impairment may impose.  Limitations appearing in these listings are considered 'marked and severe.' "  *Id.*

A child's impairment will cause "marked and severe functional limitations" at Step Three if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings."  20 C.F.R. § 416.911(b)(1); *see also* §§ 416.902, 416.924(a).  The limitations "meet" a Listing if the child actually suffers from the limitations specified in the Listings for that child's severe impairment.  The limitations "medically equal" a Listing if the child's limitations "are at least of equal medical significance to those of a listed impairment."  20 C.F.R. § 416.926(a)(2).

32

Finally, if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the Commissioner examines whether the impairment is "functionally equivalent" to those in the Listings. *Shinn ex rel. Shinn*, 391 F.3d at 1279. To make this determination, the Commissioner examines the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for [one]self; and

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The C.F.R. contains various "benchmarks" that children should have achieved by certain ages in each of these life domains. *See* 20 C.F.R. §§ 416.926a(g)-(l). A child's impairment is "of listing-level severity," and so "functionally equals the listings," if as a result of the limitations stemming from that impairment the child has "'marked' limitations in two of the domains [above], or an

33

'extreme' limitation in one domain." 20 C.F.R. § 416.926a(d); *see also* 20 C.F.R. § 416.925(a).

If the limitations stemming from a child's severe impairment meet, medically equal, or functionally equal the limitations specified in the Listings, the ALJ then examines whether the impairment "meets the duration requirement." 20 C.F.R. § 416.924(a). An impairment meets this duration requirement if it "[is] expected to cause death or . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 416.906, 416.909.

## V.     SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The findings of the Commissioner are conclusive if they are supported by substantial evidence and the Commissioner applies the correct legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*,

34

894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff claims that the Commissioner's final decision contains the following four errors: (1) the ALJ erred in finding that Plaintiff's depression was not a severe impairment; (2) the ALJ erred in finding that Plaintiff did not meet Listing 112.04; (3) the ALJ erred in concluding that Plaintiff's impairments did not functionally equal

35

a Listing; and (4) the ALJ erred in evaluating the credibility of Plaintiff's grandmother/guardian. [*See* Doc. 12]. The Court discusses each claim of error below.

### A.    Depression

Plaintiff argues that the ALJ erred by finding her depression to be a non-severe impairment because the treatment notes of Dr. Shim and Dr. Bartolomucci provide substantial evidence that the depression was a severe impairment. [Doc. 12 at 17-18]. The Commissioner argues in a footnote that there was no error because the evidence does not establish that Plaintiff's depression lasted longer than 12 months. [Doc. 14 at 10 n.1]. The Commissioner also argues that the medical evidence does not show that depression caused functional limitations based on Dr. Shim's benign treatment notes. [*Id.* at 10-13]. Plaintiff replies that the ALJ should have recontacted Dr. Shim to resolve the conflict between the treatment notes and the opinion that Plaintiff's depression resulted in marked limitations. [Doc. 15 at 2-3]. Plaintiff also argues that the Commissioner raised a *post hoc* rationalization by arguing that Plaintiff's depression did not meet the duration requirement. [*Id.* at 3].

At the second step in childhood disability cases, the Commissioner considers whether the child has an impairment or combination of impairments that is severe and that meets the duration requirement. 20 C.F.R. §§ 416.909 (duration requirement);

36

§ 416.924(a), (c) (severity requirement).  An impairment or combination of impairments is not severe if it "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  *Id.* § 416.924(c).  The impairment or combination of impairments meets the duration requirement if it has "lasted or [is] expected to last for a continuous period of at least 12 months." *Id.* § 416.909.

The undersigned concludes that the ALJ erred at Step Two in his treatment of Plaintiff's depression, but that this error was ultimately harmless.  First, the undersigned finds that the Commissioner's argument about the duration requirement is misplaced.  The ALJ's decision fails to suggest (explicitly or implicitly) that Plaintiff's depression did not meet the duration requirement.  [*See* R17-18].  Instead, the Commissioner raises this argument for the first time in his response brief. [*See* Doc. 14 at 10 n.1].  Federal courts cannot consider an agency's post hoc arguments in support of an administrative decision.  *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (forbidding courts from "accept[ing] appellate counsel's post hoc rationalizations for agency action" because an agency's order must "be upheld, if at all, on the same basis articulated in the order by the agency itself"); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with

37

a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). As a result, the Commissioner's argument in briefing about the duration requirement is a post hoc rationalization, which the Court cannot consider.

However, even if the Court could consider the argument, it still fails. The duration requirement does not require evidence that the impairment actually lasted 12 months, only evidence that the impairment is expected to last 12 months. *See* 20 C.F.R. § 41.909; *Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1216 (N.D. Ala. 2004) ("The statutory standards for disability do not require that the impairment has lasted 12 months at the time the disability determination is made. The standard requires a disabling condition 'which has lasted or can be expected to last for a continuous period of not less than twelve months[.]") (quoting 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)). Here, the evidence suggests that Plaintiff's depression, if it did not last for 12 months, could be expected to last for 12 months. In Plaintiff's disability report from August 2005, Plaintiff's grandmother indicated that Plaintiff had depression. [R74].

38

Dr. Shim and Dr. Bartolomucci both diagnosed Plaintiff with depression in September and October 2005, respectively. [R302, 417]. Plaintiff then continued to see Dr. Shim until April 2006 during which time Plaintiff was consistently diagnosed with depression. [*See, e.g.*, R293, 295-97, 299]. Plaintiff only stopped seeing Dr. Shim because Medicaid would no longer pay for the therapy. [R439]. That Plaintiff could not continue to receive treatment because of Medicaid would not mean that Plaintiff's depression resolved itself within 12 months. Also, evidence from Plaintiff's grandmother indicated that Plaintiff still felt depressed as late as March 2008. Given the state of the record, the undersigned concludes that substantial evidence does not support a finding that Plaintiff's depression does not meet the duration requirement.

Second, although Plaintiff frames the argument in terms of substantial evidence analysis, the undersigned finds that the problem with the ALJ's Step Two finding is that the ALJ never explained why he implicitly found Plaintiff's depression to be non-severe. As a result, the ALJ did not "provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The undersigned recognizes that the ALJ summarizes evidence, including that from Dr. Shim and Dr. Bartolomucci, under his Step Two finding that Plaintiff's learning disorder and speech problems were severe

39

impairments.  This summary of the evidence provides no analysis and therefore provides the Court with no insight into why the ALJ implicitly concluded that depression was not a severe impairment.  A mere summary of the evidence without any analysis simply is not helpful to the reviewing court (or the claimant who is attempting to understand why the ALJ rejected the application for disability benefits).  *Cf. Harris v. Astrue*, 546 F. Supp. 2d 1267, 1278 (N.D. Fla. 2008) (reiterating "that the ALJ did not provide any detailed discussion regarding Plaintiff's [impairment] . . ., making this court's review of his decision particularly difficult").  The medical evidence shows that both Dr. Shim and Dr. Bartolomucci gave Plaintiff depression diagnoses, [*see e.g.*, R293, 299, 417], and Plaintiff sought disability stemming from depression prior to the ALJ hearing and decision, [*see* R74, 302, 308, 417].  It was therefore the ALJ's duty to explain why these diagnoses of depression resulted in only a slight abnormality that caused minimal functional limitations, which the ALJ made no effort to do.  *Cf.* 20 C.F.R. § 416.924(a) ("If you allege more than one impairment, we *will evaluate all the impairments* for which we have evidence.") (emphasis added).

Although this failure to explain the Step Two findings relating to depression was error, the Commissioner argued at oral argument that this was harmless error. The undersigned agrees that any error at Step Two was harmless because the ALJ found

40

severe impairments, moved onto the next step in the evaluation process, and considered Plaintiff's depression in his decision. The failure to provide a reasoned explanation for a decision may be "grounds for reversal." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the Eleventh Circuit has recently stated in an unpublished opinion that "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, No. 09-12426, 2010 WL 2331416, *2 (11th Cir. June 11, 2010).[12] As a result, an error to list an impairment at Step Two is harmless error when: (1) the ALJ found that the plaintiff suffered from other severe impairments; (2) the ALJ continued with the sequential evaluation process; and (3) the ALJ considered the impairment at other steps of the evaluation process. *See id.* at *1-2 & n.3 (holding that failure to find chronic pain syndrome to be a severe impairment was harmless error because: (1) the ALJ found plaintiff had a severe impairment, which "is all that step two requires"; and (2) the ALJ considered all of plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history); *see also White v. Astrue*, No. 1:08-cv-827, 2010 WL

---

[12]   The undersigned recognizes that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr. Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007). The undersigned concludes that *Heatly* is persuasive because it is consistent with the law concerning Step Two errors as cited in the main text.

AO 72A
(Rev.8/8
2)

1729113, *5 (M.D. Ala. Apr. 28, 2010); *Zellner v. Astrue*, No. 3:08-cv-1205, 2010 WL

1258137, *4 (M.D. Fla. Mar. 29, 2010); *Newton v. Astrue*, No. 1:06-cv-1542-AJB,

2008 WL 915923, *10 (N.D. Ga. Apr. 1, 2008) (noting that courts have found Step two

error to be harmless "as long as the ALJ found at least one severe impairment and

continued the sequential analysis and ultimately addressed all of the claimant's

impairments in determining her residual functional capacity") (quoting *Swartz v.

Barnhart*, 188 Fed. Appx. 361, 368 (6th Cir. 2006)).[13]

---

[13]     The undersigned recognizes that the cases cited in the main text involve Step Two in adult disability cases and the instant case involves Step Two in a childhood disability case. Both Step Two in adult disability and Step Two in childhood disability cases involve the question of whether the claimant has a severe impairment. *Compare* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (adult) ("At the second step, we consider the medical severity of your impairment(s).") *with* 20 C.F.R. § 416.924(a) (child) ("[W]e will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe."). The definitions for severity are different in childhood and adult disability cases. *Compare* 20 C.F.R. §§ 404.1521(a), 416.921(a) (adult) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.") *with* 20 C.F.R. § 416.924(c) (child) (noting that an impairment is nonsevere if the "impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations"). This difference is, however, immaterial to the harmless error discussion because the undersigned is not examining whether Plaintiff's depression qualifies as a severe impairment but instead is examining whether the ALJ's failure to classify the depression as severe is harmless error. As such, the undersigned finds that the adult disability cases are applicable for deciding the issue of whether an error at step two constitutes harmless error.

AO 72A
(Rev.8/8
2)

The error at Step Two is harmless because the ALJ's decision indicates that he considered and evaluated Plaintiff's depression.   First, the ALJ's summaries of Dr. Shim's and Dr. Bartolomucci's opinions and Plaintiff's grandmother's testimony indicate that the ALJ was aware of the diagnoses of depression, suggesting that the depression was considered.   [R17 (noting Bartolomucci's diagnosis of "adjustment disorder with depressed mood"); R18 (noting that Dr. Shim reported Plaintiff had "depressive" symptoms and "opined that [Plaintiff] met Listing 112.04, stating that she suffers from depressive or irritable mood"); R19 (summarizing grandmother's testimony that plaintiff was "depressed")].   Second, the ALJ explicitly found the grandmother's opinion to be partially credible and found Dr. Shim's opinion to be of "negligible weight" before examining whether Plaintiff's impairments functionally equaled a Listing.  [R19].  Third, the ALJ indicated that he considered the combination of impairments in his analysis.  [*See* R18].  Given the ALJ's awareness of Plaintiff's depression, examination of depression at other places in the opinion, and rejection of opinions attributing Plaintiff's disability to depression, the undersigned finds that the ALJ's error at Step Two of not making a severity finding with regard to depression was harmless because the ALJ's opinion indicates that depression was considered at the third (and final) step in the evaluation process. *See Heatly*, 2010 WL 2331416 at *2 &

43

n.3 (finding error harmless where ALJ considered all impairments and discussed in detail testimony and medical history); *see also Inge ex rel. D.J.I. v. Astrue*, No. 7:09-cv-95, 2010 WL 247385, *8 (N.D. Tex. May 13, 2010) (finding ALJ error in ALJ's determination that intermittent explosive disorder was non-severe but that error was harmless because the ALJ considered evidence of plaintiff's anger at Step Three); *Newsome ex rel. Bell v. Barnhart*, 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006) (finding Step Two error harmless because ALJ thoroughly discussed evidence in question); *cf. R.J. v. Astrue*, No. 1:08-cv-1416, 2009 WL 2413924, *7 (S.D. Ind. July 24, 2009) (finding error at Step Two was not harmless where decision affected ALJ's analysis at Step Three); *Newton*, 2008 WL 915923 at *10 (finding error at step two was not harmless because the ALJ's decision gave no indication that he considered impairments at other steps of the evaluation process).

Since the ALJ continued on with the sequential evaluation process and considered Plaintiff depression, the undersigned concludes that any error at Step Two relating to depression was harmless. Accordingly, the undersigned **RECOMMENDS** that the District Court **FIND NO REVERSIBLE ERROR** in the ALJ's Step Two finding.

AO 72A
(Rev.8/8
2)

B.      *Listing 112.04*

Plaintiff argues that the ALJ erred by concluding that she did not meet Listing 112.04.  Plaintiff notes that Dr. Shim diagnosed her with Major Depressive Disorder in September 2005 and found that Plaintiff suffered from "many of the symptoms" outlined in Listing 112.04.  Plaintiff then argues that the ALJ did not articulate good cause for failing to give Dr. Shim's opinion controlling weight. [Doc. 12 at 20].  As for the ALJ's observation that Dr. Shim's medical notes showed that Plaintiff was cooperative with good mood, Plaintiff contends that the ALJ ignored other aspects of Dr. Shim's therapy notes, and Plaintiff appears to argue that Dr. Bartolomucci's diagnosis of Adjustment Disorder with Depressed Mood supports Dr. Shim.  [Doc. 12 at 25].

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 112.04.  [Doc. 14 at 16].  First, the Commissioner argues that Plaintiff's reliance on Dr. Shim's findings is misplaced because the ALJ properly gave Dr. Shim's report little weight in that it did not provide an explanation for conclusions and the clinical notes did not support the findings.  [*Id.* at 18-20].  Second, the Commissioner argues that Dr. Bartolomucci's opinion did not establish that Plaintiff met the Listing.  [*Id.* at 22].

45

Plaintiff replies that Dr. Shim's completion of the questionnaire was sufficient because it contained the elements for Listing 112.04. [Doc. 15 at 4]. Plaintiff also argues that the cases cited by the Commissioner are distinguishable because they did not discuss a treating physician. [*Id.* at 4-5]. Finally, Plaintiff reiterates that if there was a conflict between Dr. Shim's opinion and the medical evidence, the ALJ should have recontacted Dr. Shim. [*Id.* at 5-6].

The Commissioner will find a child is disabled at Step Three "if [the child] meets or medically equals the severity of a set of criteria for an impairment in the listings, or if [she] functionally equals the listings." 20 C.F.R. § 416.924(d)(1). Here, Plaintiff argues that Dr. Shim found that Plaintiff met Listing 112.04, [Doc. 12 at 18], so the undersigned outlines the requirements for meeting this Listing below.

Listing 112.04 applies to Mood Disorders, which are "[c]haracterized by a disturbance of mood (referring to a prolonged emotion that colors the whole psychic life, generally involving either depression or elation), accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.04.[14]

_____

[14]    Plaintiff may be arguing that the Court should examine whether Plaintiff met the version of Listing 112.04 that was in effect in 2006, not the version of the Listing currently in effect. [Doc. 12 at 19-20 ("Dr. Shim noted the presence of a Major Depressive Syndrome characterized by many of the symptoms required by Listing 112.04 Mood Disorder *as it existed in 2006*[.]") (emphasis added)]. The Court

46

To meet this Listing, "the requirements in both A and B [must be] satisfied." *Id.* To satisfy the requirements of Listing 112.04A for depression,[15] there must be:

> . . . [m]edically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Major depressive syndrome, characterized by at least five of the following, which must include either depressed or irritable mood or markedly diminished interest or pleasure:
>
> a. Depressed or irritable mood; or
>
> b. Markedly diminished interest or pleasure in almost all activities; or

---

recognizes that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. . . . By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The issue of retroactivity is complex. *See, e.g.*, *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006) (*en banc*). The undersigned concludes that it is unnecessary to determine whether the current or April 2006 version of Listing 112.04 applies because the requirements for meeting Listing 112.04 have essentially remained the same since the time Plaintiff filed her application (November 5, 2005), the time Dr. Shim provided her opinion (April 14, 2006), and the time the ALJ issued his decision (July 23, 2008). *Compare* Listing 112.04 (effective Oct. 31, 2005, to Apr. 12, 2006); Listing 112.04 (effective Apr. 13, 2006, to May 4, 2006); *and* Listing 112.04 (effective June 16, 2008 to Feb. 1, 2009).

[15]    There are different requirements for manic syndrome and bipolar or cyclothymic syndrome. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.04A(2), (3). Since Plaintiff has only alleged depression, the undersigned outlines the requirements needed to meet Listing 112.04 for depression.

47

c. Appetite or weight increase or decrease, or failure to make expected weight gains; or

d. Sleep disturbance; or

e. Psychomotor agitation or retardation; or

f. Fatigue or loss of energy; or

g. Feelings of worthlessness or guilt; or

h. Difficulty thinking or concentrating; or

i. Suicidal thoughts or acts; or

j. Hallucinations, delusions, or paranoid thinking[.]

*Id.*, Listing 112.04A.  To meet the requirements of Listing 112.04B, there must be for children between ages 3 and 18 "at least two of the appropriate age-group criteria in paragraph B2 of 112.02." *Id.*, Listing 112.04B.[16]

---

[16]    Listing 112.02B2 is met when an impairment "result[s] in at least two of the following:"

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented

48

Although there are problems with the ALJ's discussion of whether Plaintiff met a Listing, the undersigned is unpersuaded by Plaintiff's argument that Dr. Shim's opinion establishes that Plaintiff met Listing 112.04. The undersigned first outlines the problems with the ALJ's analysis. In finding that did not meet any Listing, the ALJ provided a boilerplate analysis, namely that:

> The burden has not been met by presenting specific medical evidence that supports meeting or equaling the degree of severity of a listed impairment. I have reviewed all of the claimant's impairments under the appropriate sections of the Listing of Impairments and find that her impairments, whether considered individually or in combination, do not meet or equal the level of severity set forth in any of the Listing of Impairments, nor has any treating or examining physician mentioned findings equivalent in severity to any listed impairment.

---

> by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
>
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
>
> d. Marked difficulties in maintaining concentration, persistence, or pace.

*Id.*, Listing 112.02B2. Since Dr. Shim's opinion indicates that Plaintiff cannot meet the requirements of Listing 112.02A, the undersigned does not discuss Dr. Shim's opinion relating to Listing 112.02B.

[R18].  The finding that no "treating or examining physician mentioned findings equivalent in severity to any listed impairment" is contradicted by the ALJ's notation two paragraphs above that "Dr. Shim opined that [Plaintiff] met Listing 112.04." [R18].  Thus, the ALJ's opinion is internally inconsistent because he has both found that no "treating or examining physician mentioned findings equivalent in severity to any listed impairment" and that Dr. Shim, a treating doctor, "opined" that Plaintiff met Listing 112.04.  To compound the problem, the ALJ was wrong to conclude that Dr. Shim found that Plaintiff met Listing 112.04 (as discussed below).  If Plaintiff's brief sought remand on these grounds, the undersigned may have recommended remand given the inconsistencies and inaccuracies in the ALJ's decision.  But, Plaintiff seeks remand (or an award of benefits) on a different basis, namely that Dr. Shim's opinion is sufficient to establish that Plaintiff met Listing 112.04.  This argument is wrong for the reasons that follow.

Dr. Shim completed a questionnaire to determine whether Plaintiff's depression met Listing 112.04, [*see* R306-08], but Dr. Shim's responses to the questionnaire demonstrate that Plaintiff did not meet Listing 112.04.  As summarized above, a plaintiff meets Listing 112.04 if she meets criteria in both Listing 112.04A and 112.04B, and Dr. Shim's opinion shows that Plaintiff did not meet the criteria in

50

Listing 112.04A.[17]  To meet the criteria in Listing 112.04A, the depression impairment must meet "at least five" of ten characteristics.  On Dr. Shim's questionnaire, the 112.04A criteria are found in Question E(1)(a) - (j).  Dr. Shim only identified Plaintiff as having three of the ten characteristics - - depressive or irritable mood, feelings of worthlessness or guilt, and difficulty thinking or concentration - - from Listing 112.04A.  [*See* R306].  For the remaining seven characteristics, Dr. Shim found that they were, "Absent."  [*Id.*].  As a result, Dr. Shim did not determine that Plaintiff met "at least five" criteria necessary to establish the requirements from Listing 112.04A.  Thus, Plaintiff incorrectly argues that Dr. Shim found that Plaintiff met Listing 112.04.  Therefore, the undersigned concludes that Plaintiff's argument, which focuses on Dr. Shim's opinion, does not establish that the ALJ erred in evaluating whether Plaintiff met Listing 112.04.

---

[17]     The Commissioner raised a similar argument in rejecting Plaintiff's argument at oral argument.  Although the undersigned questioned the propriety of this argument during oral arguments, the undersigned concludes that the Commissioner properly raised it given Plaintiff's insistence that Dr. Shim's opinion established that Plaintiff met Listing 112.04.  Also, the Eleventh Circuit has indicated that the ALJ's lack of discussion of a specific Listing at Step Three is not fatal to the ALJ's decision.  *See Turberville ex rel. Rowell*, 316 Fed. Appx. at 893 (holding "that-though the ALJ did not explicitly discuss why [Plaintiff] did not actually meet Listing 112.05-substantial record evidence supports that [Plaintiff's] condition did not actually . . . meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that [Plaintiff] was not disabled" pursuant to Listing).

AO 72A
(Rev.8/8
2)

Besides arguing that Plaintiff met Listing 112.04 based on Dr. Shim's opinion, Plaintiff has also argued that the ALJ erred at Step Three by implicitly rejecting Dr. Shim's medical opinion concerning Listing 112.04. It is well settled that the opinion of a treating physician is ordinarily entitled to controlling weight. *See* 20 C.F.R. § 416.927(d)(2). Although this opinion is entitled to substantial weight, the ALJ may give the opinion no weight if the ALJ specifies good cause for doing so.[18] *See Henry v. Barnhart*, 156 Fed. Appx. 171, 174 (11th Cir. Nov. 25, 2005). "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Schuhardt v. Astrue*, 303 Fed. Appx. 757, 759 (11th Cir. Dec. 17, 2008) (citing

---

[18]    The regulations provide that when the ALJ does not give the treating doctor's opinion controlling weight, the ALJ applies the following factors: (1) the length of the treatment relationship and frequency of the examination, 20 C.F.R. § 416.927(d)(2)(i); (2) the nature and extent of the examinations and testing by the doctor, *id.* § 416.927(d)(2)(ii); (3) the extent of the explanation for the opinion and the extent that the opinion is supported with evidence, *id.* § 416.927(d)(3); (4) the consistency with the record as a whole, *id.* § 416.927(d)(4); (5) the specialization of the doctor providing the opinion, *id.* § 416.927(d)(5); and (6) other factors such as the doctor's familiarity with Social Security programs, *id.* § 416.927(d)(6). The Eleventh Circuit has recognized that good cause exists to discount the treating physician's opinion: (1) "when the report 'is not accompanied by objective medical evidence or is wholly conclusory,' " *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. Sept. 26, 2007) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); and (2) where the opinions "are inconsistent with [the doctor's] own medical records," *id.* (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

AO 72A
(Rev.8/8
2)

*Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).  However, when the ALJ errs in evaluating the treating doctor's opinion, the Eleventh Circuit requires that the opinion be accepted as true.  *See Snyder v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 843, 847 (11th Cir. May 29, 2009) ("If an ALJ either 'ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.' ") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

The undersigned finds that even if the ALJ erred in evaluating Dr. Shim's opinion relating to Listing 112.04, the error would not require a remand of the ALJ's decision.  As discussed above, Dr. Shim's opinion relating to Listing 112.04 does not establish that Plaintiff met Listing 112.04.  Therefore, even if Dr. Shim's opinion as to the Listing is deemed true, it does not establish that Plaintiff met Listing 112.04.  As a result, any error by the ALJ in evaluating Dr. Shim's opinion would not require remand on the basis that Plaintiff met Listing 112.04.

Since Plaintiff's grounds for seeking remand relating to the ALJ's Listing 112.04 finding are unpersuasive, the undersigned **RECOMMENDS** that the District Court **FIND NO ERROR** in the ALJ's conclusion that Plaintiff did not meet Listing 112.04.

53

AO 72A
(Rev.8/8
2)

C.    *Functionally Equal the Listings*

Plaintiff argues that substantial evidence does not support the ALJ's findings that she had no limitations in attending and completing tasks and less than marked limitations in acquiring and using information and interacting with others. [Doc. 12 at 21-22]. First, Plaintiff contends that for the domain of acquiring and using information, the ALJ ignored the opinions of Dr. Shim, Dr. Bartolomucci, and teacher Gresham all of whom made findings about Plaintiff's difficulties acquiring and using information. [*Id.* at 22]. Plaintiff notes that the ALJ's reliance on poor attendance is not supported by the record. [*Id.* at 23]. Second, Plaintiff argues that for the domain of attending and completing tasks, the ALJ erred because the ALJ relied on a teacher who had only known Plaintiff for two weeks and this opinion was contradicted by evidence from Dr. Shim, teacher Gresham, and an EIP. [*Id.* at 22-23].

The Commissioner argues that Plaintiff did not functionally equal the Listings. First, the Commissioner asserts that the ALJ properly discounted Dr. Shim's opinion. [Doc. 14 at 18-20]. Second, the Commissioner contends that Gresham's opinion does not show marked limitations in two or more domains given that Gresham found only mild deficits in receptive language skills, Plaintiff could work independently if a teacher checked work, Plaintiff could complete tasks in a timely manner, and Plaintiff

54

got along with her teachers and peers.  [*Id.* at 21-22].  Third, the Commissioner contends that Dr. Bartolomucci's opinion does not establish that Plaintiff's limitations functionally equal a Listing.  [*Id.* at 22].

A child is disabled if the ALJ finds that limitations resulting from a child's impairment are functionally equivalent to those in the Listings.  *Shinn ex rel. Shinn*, 391 F.3d at 1279.  The ALJ makes this determination by considering how the child's limitations (stemming from impairments) interfere with the child's normal life activities that are categorized in six domains of functioning.  *Id.*  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A child will be found disabled if she has marked limitations in two of these domains or an extreme limitation in one of these domains.  *Id.* § 416.926a(d).  It is the ALJ's responsibility to determine functional equivalence along these domains.  *Id.* § 416.926a(n).  Plaintiff asserts that the ALJ erred in evaluating the first three of these domains - - acquiring and using information, attending and completing tasks, and interacting and relating with others.  [Doc. 12 at 21-22].  The undersigned addresses each domain separately below.

55

1.      *Interacting and Relating with Others*

Although Plaintiff states that the ALJ erred in finding no marked limitations in the domain of interacting with others, Plaintiff has not offered any substantive arguments in her brief on this issue.  [*See* Doc. 12 at 22-24].  The undersigned's scheduling order indicated that "[t]he issues before the Court are limited to the issues properly raised in the briefs."  [Doc. 11 at 3].  Without substantive briefing, Plaintiff did not properly raise the issue, so the undersigned finds that Plaintiff has abandoned this issue.  *See Risco v. Astrue*, No. 8:09-cv-1430, 2010 WL 2195455, *4 (M.D. Fla. June 1, 2010) ("[S]ince only these two contentions have been raised, any other arguments are deemed abandoned.").  To the extent that Plaintiff did not intend to abandon this argument, the undersigned alternatively concludes that substantial evidence supports the ALJ's finding in this domain.

In the interacting[19] and relating with others[20] domain, the Commissioner considers "how well [the claimant] initiate[s] and sustain[s] emotional connections with

---

[19]     "Interacting means initiating and responding to exchanges with other people, for practical or social purposes."  20 C.F.R. § 416.926a(i)(1)(i).

[20]     "Relating to other people means forming intimate relationships with family members and with friends who are [the claimant's] age, and sustaining them over time."  20 C.F.R. § 416.926a(i)(1)(ii).

AO 72A
(Rev.8/8
2)

others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others."   20 C.F.R. § 416.926a(i); *see also* Social Security Ruling ("SSR") 09-5p.   The regulations explain that "[i]nteracting and relating require [the claimant] to respond appropriately to a variety of emotional behavioral cues," "speak intelligibly and fluently so that others can understand," "participate in verbal turntaking and nonverbal exchanges," "consider others' feelings," "follow social rules for interaction and conversation," and "respond to others appropriately and meaningfully." 20 C.F.R. § 416.926a(i)(1)(iii).  For school age children (ages 6 to 12), they should be able to develop lasting friendships, understand how to work in groups, understand others' points of view, talk to others of all ages, share ideas, tell stories, and speak in a manner that is understandable to listeners.   *Id.* § 416.926a(i)(2)(iv). Limitations in this domain include: not having close friends; not having friends the claimant's age; withdrawing from people or being overly anxious meeting new people; having difficulty playing games; having difficulty communicating with others; and having difficulty speaking intelligibly or with sufficient fluency.   *Id.* § 416.926a(i)(3)(ii)-(vi).

57

The ALJ found less than marked limitations in this domain by noting that although Plaintiff was timid, was self-conscious, and had communication problems, she also had friends her age, made new friends, got along with adults, and got along with teachers. [R22]. This conclusion is supported by the substantial evidence. First, the record is replete with references to Plaintiff having and making friends and getting along with peers. [R62, 83, 88, 108, 212, 240, 299, 300, 313]. Second, the record also demonstrates that Plaintiff got along with adults and teachers and was cooperative with teachers. [R62, 83, 89, 240, 313, 401]. Third, although Plaintiff had a speech impairment, this did not appear to be much of an impediment to Plaintiff's interactions with her peers or grown ups. Given this record evidence of friendships and appropriate interactions with peers and adults, the undersigned concludes that the ALJ's finding of less than marked limitations in the domain of interacting with and relating with others is supported by substantial evidence. *See* 20 C.F.R. §§ 416.926a(i)(2)(iv) (indicating that a school age child should be able to, *inter alia*, develop lasting friendships and talk to others of all ages), 416.926a(i)(3)(ii)-(vi) (listing the followings examples of limitations in the interacting and relating with others domain: not having close friends, not having friends the claimant's age, withdrawing from people, having difficulty

58

communicating with others, and having difficulty speaking intelligibly or with sufficient fluency).

Therefore, even if Plaintiff did not abandon her arguments relating to the domain of interacting and relating with others, the undersigned finds substantial evidence supports the ALJ's conclusion of less than marked limitations in this domain. Accordingly, the undersigned **RECOMMENDS** that the District Court find **NO ERROR** concerning the Commissioner's findings relating to the interacting and relating with others domain.

### 2.   *Attending and Completing Tasks*

In the domain of attending and completing tasks, the Commissioner considers "how well [claimants are] able to focus and maintain [their] attention, and how well [they] begin, carry through, and finish [their] activities, including the pace at which [they] perform activities and the ease with which [they] change them."  20 C.F.R. § 416.926a(h); *see also* SSR 09-4p.  Attention involves regulating levels of alertness, maintaining concentration, filtering out distractions, remaining focused long enough to complete tasks, returning to a task to finish it, and changing focus once a task is completed. 20 C.F.R. § 416.926a(h)(1)(i).  For school age children, the Commissioner provides the following guidelines:

59

> When you are of school age, you should be able to focus your attention in
> a variety of situations in order to follow directions, remember and
> organize your school materials, and complete classroom and homework
> assignments. You should be able to concentrate on details and not make
> careless mistakes in your work (beyond what would be expected in other
> children your age who do not have impairments). You should be able to
> change your activities or routines without distracting yourself or others,
> and stay on task and in place when appropriate. You should be able to
> sustain your attention well enough to participate in group sports, read by
> yourself, and complete family chores. You should also be able to
> complete a transition task (e.g., be ready for the school bus, change
> clothes after gym, change classrooms) without extra reminders and
> accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). A plaintiff's functioning in this domain is considered

limited if the child is: (1) easily distracted or startled by sounds, sights, or touch;

(2) slow to focus on or unable to complete activities; (3) prone to repeatedly becoming

sidetracked or to interrupt others; (4) easily frustrated and prone to give up on tasks;

and (5) in need of extra supervision to remain engaged in an activity. *Id.*

§ 416.926a(h)(3)(i)-(v).

The undersigned concludes that substantial evidence does not support the ALJ's

finding that Plaintiff had "no limitation in attending and completing tasks." [R21]. The

record shows that Plaintiff was easy to distract and easy to frustrate. This was reported

by Plaintiff's grandmother, [R74, 434, 438], and Dr. Shim noted that Plaintiff was

distractible. [R300, 302].

60

Additionally, Plaintiff's school records contain references to Plaintiff having problems screening out distractions. A 2003 Skills Inventory Form for Plaintiff, answered, "NO," to the following statements: (1) "Can focus attention on relevant stimuli and screen out distractions"; (2) "Sustains attention and concentration at an age appropriate level"; (3) "Can shift attention from one activity to another"; and (4) "Stays on task during" "large group instruction" and "small group instruction/activities." [R261]. This report suggests that Plaintiff was limited in that it showed that Plaintiff was easily distracted and became side tracked. *See* 20 C.F.R. § 416.926a(h)(3)(i), (iii) (providing these characteristics as being "[e]xamples of limited functioning in attending and completing tasks"). The undersigned recognizes that this report preceded Plaintiff's disability application, but the school reports that followed the inventory form noted similar concerns. For instance, Plaintiff's teacher in September 2005 noted that Plaintiff needed redirection to complete tasks, which demonstrates a limitation in this domain. [R89]. *See* 20 C.F.R. § 416.926a(h)(3)(v) (noting that needing extra supervision to stay engaged in an activity was an example of limited functioning n attending and completing tasks domain). Also, Plaintiff's speech pathologist noted in February 2006 that Plaintiff had difficulty following complex instructions in a distracting environment, which is also evidence of limitations in this domain. [R313].

61

*See* 20 C.F.R. § 4316.926a(h)(3)(i), (iii).  Further, Plaintiff's teacher in May 2008 noted that Plaintiff was unable to understand directions given to her, and would not complete tasks if she did not understand a task.  [R62-63].  This is the type of evidence listed in the Commissioner's regulations as evidence of limitations in the domain of attending and completing tasks.  As a result, the undersigned concludes that substantial evidence does not support the ALJ's decision that Plaintiff had no limitations in the domain of attending and completing tasks.

The undersigned recognizes that the ALJ cited to three pieces of evidence to support his conclusion: (1) Baker's report that Plaintiff tries to complete tasks; (2) Plaintiff's ADHD-IV rating, which indicated that Plaintiff did not have problems with attention and hyperactivity; and (3) Plaintiff's grandmother's testimony about Plaintiff keeping busy on her own, working on craft projects, and completing chores. [R21].  As the following discussion shows, this reasoning indicates that the ALJ ignored the evidence cited above and also selectively ignored other, contrary evidence from Baker, Bartolomucci, and Plaintiff's grandmother. First, Baker's report indicated that Plaintiff needed to "be redirected several times to complete tasks in class," [R89], which suggests a limitation is present in attending to and completing tasks.  *See* 20 C.F.R. § 416.926a(h)(v).  Second, although Bartolomucci noted that there were no

62

concerns with inattention or hyperactivity on the ADHD-IV Rating Scale, Bartolomucci also indicated that Plaintiff needed additional supervision to complete tasks in that Plaintiff needed: (1) special instruction to ensure that she could perform a task before working independently; and (2) teachers to check up on her to ensure that she understood instructions. [R417]. These recommendations suggest limitations in the domain of attending and completing tasks. *See* 20 C.F.R. § 416.926a(h)(3)(v). Finally, while Plaintiff's grandmother indicated that Plaintiff kept busy, worked on arts projects and "sometime" completed chores, she also noted at the same time (and on the same page) that Plaintiff could not finish things she started or complete homework, [*see* R85], which is evidence of limitations in the domain of attending and completing tasks. *See* 20 C.F.R. § 416.926a(h)(3)(ii). Thus, the ALJ selectively chose evidence without discussing the countervailing evidence that did not support his conclusions, which is error. *See Reeves v. Astrue*, No. 2:08-cv-655, 2010 WL 1381002, *10 (M.D. Ala. Mar. 31, 2010) (" The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion. The ALJ's failure to mention or consider contrary medical records, let alone articulate reasons for disregarding them, is reversible error."); *Smith v. Astrue*, No. 3:08-cv-406, 2009 WL 3157639, *8 (M.D. Fla. Sept. 25, 2009) ("The

63

ALJ may not, however, selectively rely on only a limited part of the record, while ignoring other parts.") (citing *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)[21]).

Based on the evidence of limitations in the domain of attending and completing tasks and the ALJ's selective citation to the evidence, the undersigned concludes that substantial evidence does not support the ALJ's finding that Plaintiff had no limitations in the domain of attending and completing tasks.  Accordingly, the undersigned **RECOMMENDS** that the District Court find that the ALJ **ERRED** in evaluating the domain of attending and completing tasks.

### 3.    *Acquiring and Using Information*

In the domain of acquiring and using information, the Commissioner "consider[s] how well [claimants] acquire or learn information, and how well [they] use the information [they] have learned."  20 C.F.R. § 416.926a(g).  "[T]his domain considers more than just assessments of cognitive ability as measured by intelligence tests,

---

[21]    The Eleventh Circuit in *McCruter* stated: "It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.  The review must take into account and evaluate the record as a whole."  *McCruter*, 791 F.2d at 1548.

academic achievement instruments, or grades in school."  SSR 09-3p.  Thus, the

Commissioner states that school age children:

> should be able to learn to read, write, and do math, and discuss history and science.  [They] will need to use these skills in academic situations to demonstrate what [they] have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions.  [They] will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change).  [They] should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).  Limitations in this domain include having difficulty

solving math questions or computing arithmetic answers and talking only in short,

simple sentences.  *Id.* § 416.926a(g)(3)(iv), (v).  School records are a significant source

of information about limitations in this domain, so evidence of poor grades,

inconsistent academic performance, and special education services indicates limitations

in this domain.  SSR 09-3p.

A marked limitation in this domain and other domains "means a limitation that

is 'more than moderate' but 'less than extreme,' . . . [and i]t is the equivalent of the

functioning we would expect to find on standardized testing with scores that are at least

65

two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.026a(e)(2)(i). Besides test scores, the Commissioner considers "all the relevant information in [the] case record that helps [him] determine [the claimant's] functioning, including [ ] signs, symptoms, and laboratory findings, the descriptions . . . about [the claimant's] functioning" and other relevant information. *Id.* § 416.926a(e)(1)(i). As a result, the Commissioner will find that a claimant has a marked limitation when: (1) the claimant has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain"; and (2) the claimant's "day-to-day functioning in domain-related activities is consistent with that score." *Id.* § 416.926a(e)(1)(iii).[22] In less technical terms, a marked limitation exists "in a domain when [the claimant's] impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2).

The undersigned concludes that the ALJ has not provided sufficient reasons for the Court to conclude that substantial evidence supports his decision that Plaintiff had less than marked limitations in acquiring and using information. Although the ALJ

---

[22]   Stated differently, the Commissioner considers test scores along with other information about a claimant's functioning, including reports of class room performance and observations of school personnel. 20 C.F.R. § 416.926a(e)(4)(ii).

66

need not address every piece of evidence, the ALJ must provide some basis for his reasoning.  *See Jamiah v. Astrue*, No. 1:09-cv-1761-AJB, 2010 WL 1997886, *17 (N.D. Ga. May 17, 2010) (noting that although the ALJ need not refer to every piece of evidence, the ALJ must be able to determine whether the decision is reasonable and supported by substantial evidence).  The ALJ's reasons for finding less than marked limitations in this domain are as follows: poor attendance in the first two years of school, academic difficulties, speech therapy, speech articulation difficulties, and improving school performance. [R20].[23]  These reasons are confusing and inadequately address the issue of acquiring and using information, especially given the conflicting evidence on this issue.

First, it is unclear what relevance certain reasons proffered by the ALJ have to support his finding of less than marked limitations in this domain.  As for Plaintiff's attendance in her first two years of school, the ALJ has not explained the relevance of

---

[23]    Specifically, the ALJ stated that Plaintiff had less than marked limitation in acquiring and using information as follows: "Although [Plaintiff] has had problems in this area, the record shows that during her first two years of school she attended six different schools and attendance was a significant problem.  [Plaintiff] received speech therapy at school for articulation difficulties and had academic difficulties particularly in reading, writing and spelling.  During a psychological evaluation in October 2005, [Plaintiff] was noted to have some speech articulation difficulties but her communication was understandable.  The evidence shows her performance in school has been improving."  [R20].

67

this evidence to the issue of acquiring and using information.  The ALJ may be using this evidence to explain Plaintiff's academic problems.  The ALJ may be citing to this evidence to demonstrate that the attendance problems were the reason for the delays in acquiring information, not Plaintiff's speech or learning problems.  The ALJ may be using this information for another reason.  Whatever the reason, the ALJ has offered no explanation, and it is not self-evident why this attendance (from a period prior to Plaintiff's disability application) is relevant to the issue of how well Plaintiff acquires or learns information, and how well she uses the information she has learned.[24]

As for Plaintiff's speech therapy, the ALJ has not explained what bearing this evidence has on the issue acquiring and using information.  The ALJ may have cited this evidence to show that Plaintiff was able to communicate information that she learned, but this is not explicitly stated.  Also, this evidence relating to speech articulation difficulties and communication abilities does not appear to relate to the issue of acquiring information.

Third, the ALJ's observation that Plaintiff's performance in school was improving although relevant to the issue and noted in a number of school records, [*see*

_____

[24]      The undersigned additionally notes that Plaintiff did not have attendance problems after 2001.  [*See* R61, 88, 282, 313, 348].

68

R108, 155, 282, 401], is not helpful for distinguishing why this improvement is evidence of less than marked limitations instead of a marked limitations.  The record evidence shows that Plaintiff was continually placed in special education classes throughout the relevant period for her disability application.  The basis for this placement has been Plaintiff's weaknesses in reading, spelling, decoding, and math reasoning.  [R61, 109, 213, 240, 374].  Also, Plaintiff has continued to test below grade in reading comprehension, math computation, and spelling. [*See* R61, 164, 275, 282, 401].  Records show that Plaintiff has struggled with multiplication and division for a number of school years.  [*See* R88, 313, 401].  Given the evidence of Plaintiff's persistent problems with spelling, reading, and math, the ALJ has not explained why these persistent problems in learning are evidence of only less than marked limitations in the domain of acquiring information.

The undersigned recognizes that there is evidence (not cited by the ALJ's opinion) that supports his conclusion.  First, Plaintiff's report cards demonstrate that she passed her regular and special education classes.  [*See* R164, 282].  Second, Plaintiff tested in the average range of intelligence and/or was no lower than two standard deviations of the mean IQ.  [*See* R411].  Third, non-examining experts determined that Plaintiff did not have marked limitations in this domain.  [*See* R316,

69

329].  If cited by the ALJ, this evidence may have constituted substantial evidence to support his decision.  *See England v. Astrue*, 490 F.3d 1017, 1020 (8th Cir. 2007) (holding that substantial evidence supported the ALJ's decision that plaintiff did not suffer from a marked limitation in the domain of acquiring and using information despite evidence of low intellectual functioning where IQ scores were less than two standard deviations below the mean (*i.e.*, an IQ of 70), claimant's level of intellectual functioning was borderline, and the claimant progressed through school while taking some general education classes); *Brewer ex rel. S.B. v. Astrue*, No. 08-cv-518, 2010 WL 2287480, *5 (W.D.N.Y. June 2, 2010) (finding that despite claimant having borderline IQ, being learning disabled, performing below grade level, and receiving special assistance in school, substantial evidence supported ALJ's finding that plaintiff did not have marked limitations where ALJ noted plaintiff recalled instructions, worked with reflection, was deliberate, orderly, and self-correcting, and school records showed that plaintiff was learning and making progress); *Spurgeon v. ex rel. K.M. v. Comm'r of Soc. Sec.*, No. 1:09-cv-430, 2010 WL 1882158, *10-11 (S.D. Ohio Apr. 12, 2010) (R&R) (rejecting plaintiff's argument that ALJ erred in finding less than marked limitations in the domain of acquiring and using information where plaintiff passed all grades, except for first grade, was in regular classes except for reading, math, and

70

writing, expert found less than marked limitations in this domain, and school records showed that plaintiff had improved).  However, the ALJ did not cite this evidence to support his finding, and it is inappropriate for the Court to supply this uncited evidence as substantial evidence in support of the ALJ's decision, especially where there is no indication that the ALJ relied on such evidence.  *See Dixon v. Astrue*, 312 Fed. Appx 226, 229 (11th Cir. Feb. 13, 2009) (noting that a court "may not supply a reasoned basis for [an] agency's action that the agency itself has not given," but that the court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned") (quoting *Zahnd v. Sec'y Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir. 2007)).

Even if it were appropriate for the Court to marshal the evidence in the record to support the ALJ's under explained decision, it would not be appropriate for the undersigned to do so in this case because there is other evidence that suggests the presence of greater limitations in this domain.  First, Plaintiff tested between two and three standard deviations below average on the WIAT-II test,[25] [R413],which is some evidence of a marked limitation.  *See* 20 C.F.R. § 416.926a(e)(2)(iii).  Bartolomucci

---

[25]    According to Bartolomucci's report, the WIAT-II had a mean of 100 and a standard deviation of 15.  [R413].  As a result, Plaintiff's scores of 64, 66, and 70 would be two standard deviations below the mean, *i.e.*, a score of 70 or below.

explained that these WIAT-II results were evidence that Plaintiff was "having difficulty acquiring new information presented to her within the school setting." [R413].

Second, Bartolomucci made a number of observations relevant to the acquiring information domain by noting that Plaintiff's IQ scores fell in the borderline range. [R411-12]. Bartolomucci also noted that Plaintiff may have lacked of "a broad base of word vocabulary needed to understand communications as well as to fully articulate her own thoughts." Bartolomucci found that Plaintiff was "likely to have difficulties compared to her same aged peer" in abstract, verbal reasoning. [R412]. She also found that Plaintiff "may learn new information somewhat slower than the average peers in her classroom." [R413]. Bartolomucci also found Plaintiff's WIAT-II scores "especially concerning" because Plaintiff had repeated two grades. [R413]. This evidence, which was not cited by the ALJ, provides evidence of limitations in the domain of acquiring information.

Third, the records demonstrated that she had been held back twice, [*See* R341, 410], was placed in special education classes for reading and math, [R112, 216, 242, 374], and consistently performed below peers both of her age and her grade level in

72

math and language arts, [R61,[26] 255-56, 401].  These records serve as evidence in the

domain of acquiring and using knowledge.  *See* SSR 09-3p.

Fourth, Plaintiff also consistently had difficulty with the same types of problems

over a number of school years, including weaknesses in math reasoning, spelling,

decoding, and reading comprehension, suggesting limitations in acquiring information.

These same problems were noted in February 2003, April 2005, April 2006, and May

2008.  [R61, 213, 262, 277, 313].  Finally, the evidence shows that Plaintiff could not

master multiplication over a number of school years.  Despite this being noted as

problem in September 2005, [R88], school records indicated that this problem persisted

in April 2006, [R313], and May 2008, [R401].  That Plaintiff consistently had problems

in the same areas over time indicates that Plaintiff may have had marked limitations in

acquiring knowledge.

Thus, there is conflicting evidence in the record concerning the extent of

Plaintiff's limitations in the acquiring and using information domain.

The Commissioner must explain how he resolved this conflicting evidence.  *See*

---

[26]     For instance, Plaintiff was in sixth grade in May 2008, but she should have
been in eighth grade because she was held back for two years.  Her reading, math, and
written expression skills were at the third and fourth grade level, so Plaintiff did not
have the skills typical of those her own age or even those in her own grade.

73

SSR 09-2p (noting that adjudicators should "resolve any inconsistencies that need to be resolved"). The ALJ's current decision does not explain why the ALJ resolved the issue against Plaintiff and instead strings together unclear, unexplained and potentially irrelevant information. Given the evidence of problems in acquiring information and the ALJ's failure to resolve inconsistencies in this evidence, the undersigned concludes that the Commissioner must explain the basis for his decision. *See McClain v. Barnhart*, 299 F. Supp. 2d 309, 325 (S.D.N.Y. 2004) (finding ALJ erred in evaluating domain of acquiring and using information where ALJ failed to "address the significant quantity of evidence in the record indicating continued impairment in [plaintiff's] intellectual and academic functioning"); *see also Nester v. Astrue*, Civ. Action No. 08-2045, 2009 WL 349701, *2 (E.D. Pa. Feb. 12, 2009) (remanding where the ALJ's stated reasons for conclusions in domain of acquiring and using information were quite sparse, making the job of evaluating conclusions difficult); *A.S.W. v. Astrue*, No. 4:06-cv-1276, 2008 WL 723727, *22 (E.D. Mo. Mar. 17, 2008) (referring to ALJ's analysis as "abbreviated" where ALJ selectively cited evidence and failed to address relevant evidence); *cf. L.H. v. Soc. Sec. Admin.*, No. 3:07-cv-300, 2008 WL 2785489, *9 (N.D. Ind. July 15, 2008) (finding the ALJ's cursory conclusion that plaintiff had no difficulty

74

acquiring and using information where there was an "abundance of evidence contrary to the ALJ's reasoning").

Given the ALJ's inadequate discussion and analysis of the evidence relating to the domain of acquiring and using information, the undersigned concludes that the ALJ erred in evaluating the domain of acquiring and using information.  Accordingly, the undersigned **RECOMMENDS** that the District Court find that the ALJ **ERRED** in evaluating the domain of acquiring and using information.

D.      *Credibility Determination*

Plaintiff argues that the ALJ did not properly evaluate the credibility of Plaintiff's grandmother because the ALJ did not provide adequate reasons and only left the court to guess at the credibility finding.  [Doc. 12 at 24].  The Commissioner appears to argue that the ALJ properly rendered a credibility determination because: (1) the ALJ discussed the standard for evaluating subjective complaints; (2) the ALJ discussed the evidence presented by Plaintiff; and (3) the ALJ reviewed treatment notes, school reports and clinical testing.  [Doc. 14 at 24-25].  As a result of this discussion and review, the Commissioner contends that "[t]he ALJ properly determined Plaintiff's grandmother was not fully credible."  [*Id.* at 25].

75

If a child is unable to adequately describe her symptoms (as in this case), the Commissioner "will accept as a statement of [these] symptom(s) the description given by the person who is most familiar with [the child], such as a . . . guardian." 20 C.F.R. § 416.928(a). "[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), so the determination is "review[ed] to determine if it is supported by substantial evidence," *Preston v. Barnhart*, 187 Fed. Appx. 940, 941 (11th Cir. June 29, 2006). Although substantial evidence need only support a credibility determination, the ALJ must "clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). This does not mean that the ALJ must provide "particular phrases or formulations," but the ALJ must provide more than "a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [the] medical condition as a whole.' " *Id.* (quoting *Foote*, 67 F.3d at 1561). The Commissioner considers the objective medical evidence and the following factors in evaluating credibility:

1.      The individual's daily activities;

76

2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.    Factors that precipitate and aggravate the symptoms;

4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also* 20 C.F.R. § 416.929(c)(3) (listing same factors). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Leiter v. Astrue*, No. 09-15293, 2010 WL 1794177 (11th Cir. May 6, 2010) (quoting *Foote*, 67 F.3d at 1562).

The undersigned concludes that the ALJ's credibility determination must be reevaluated in light of the ALJ's errors in evaluating the domains of attending and completing tasks and acquiring and using information. Although the ALJ's credibility determination is confusing, it appears that it was in part based on his finding that

77

Plaintiff did not functionally equal the Listings.  Since the ALJ must re-evaluate his findings concerning functional equivalence, the undersigned concludes that it is necessary for the ALJ to re-evaluate the credibility of Plaintiff's grandmother.

Accordingly, the undersigned **RECOMMENDS** that the District Court **DIRECT** the Commissioner to reevaluate the credibility of Plaintiff's grandmother.

## VII.   CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that the Commissioner's final decision be **REVERSED AND REMANDED**.  The Clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO RECOMMENDED AND DIRECTED**, this the 15th day of July, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

78